**UNITED STATES of America**

v.

**Christian CASTRO, Defendant.**

**No. CR. 95–71–P–H.**
**Civil No. 99–30–P–H.**

United States District Court,
D. Maine.

June 25, 1999.

George T. Dilworth, AUSA, Margaret D. McGaughey, AUSA, Office of the U.S. Attorney, Portland, Maine, for the government.

Christian Castro, Fort Dix, NJ, pro se.

## ORDER ON DEFENDANT'S MOTION FOR COLLATERAL RELIEF PURSUANT TO 28 U.S.C. § 2255

HORNBY, Chief Judge.

■ The Magistrate Judge initially recommended that I deny this § 2255 motion without a hearing because large parts of it were unsworn, contrary to Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts (§ 2255 Rules) and First Circuit precedent. *See United States v. LaBonte,* 70 F.3d 1396, 1413 (1st Cir.1995), *rev'd on other grounds,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). The Magistrate Judge's recommended decision, dated April 14, 1999 (Docket Item 77), crossed in the mails with the defendant's request (dated April 10, 1999, postmarked in the prison mail system April 15, 1999, and received April 19, 1999) to amend his motion to supply the missing verification. *See* Petitioner's Reply Motion in Opposition to the Government's Motion that is in Opposition to Petitioner's Motion for Relief Under 28 U.S.C. § 2255 ("Petitioner's Reply") (Docket Item 78). The Magistrate Judge subsequently rejected the request to amend. *See* Endorsement dated May 24, 1999, on Petitioner's Objections to the Magistrate's Report and Recommendations (Docket Item 79). He treated it as a reply memorandum to the government's earlier response, and found it late under this District's Local Rules, which allow only five (5) days for a reply memorandum. *Id.; see* Local Rule 7(c). The defendant objects, contending that he had 20 days to respond under Fed. R.Civ.P. 12(a). *See* Letter from Christian Castro to Case Manager Susan L. Hall, dated June 4, 1999 (Docket Item 80).

Section 2255 proceedings have their own separate set of rules. Rule 2 sets the standards for what a motion must contain, along with the requirement that it be sworn. Rule 3 provides that the motion be filed with the court, that the Clerk then deliver it to the United States Attorney, and that the United States Attorney answer the motion only if directed to do so by the Court. Rule 5 is directed to the requirements for an "Answer" to the motion, if the Court orders an Answer. It requires a response to the allegations of

the motion (analogous to an Answer to a Complaint) and requires the United States Attorney to provide information about prior motions and prior evidentiary hearings. The § 2255 Rules do not contemplate any reply to the government's Answer. They do provide that

█f no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules.

Rule 12.

Since the § 2255 Rules are designed to have the defendant swear to certain factual assertions and to have the government answer them when so directed by the Court, I conclude that the Federal Rules of Civil Procedure provide the most appropriate analogy for what the defendant has done here. Essentially he has requested permission to amend his motion, just as a plaintiff may move to amend his complaint under Fed. R.Civ.P. 15. The Local Rules concerning the time limits on reply memoranda therefore do not control. I follow the analogy of Fed. R.Civ.P. 15, and I see no good ground for denying leave to amend. I accept the defendant's motion as now properly verified as required.

█ It is necessary, therefore, to reach the merits of his motion and to determine whether any evidentiary hearing is required. The First Circuit has instructed that an evidentiary hearing is not required when "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are "inherently incredible." ' " *David v. United States*, 134 F.3d 470, 477 (1st Cir.1998) (quoting *United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir.1993)).

The defendant asserts that his lawyer failed to investigate his case and failed to inform him of a plea agreement offered by the government. As a result, according to the defendant, he proceeded to trial and was found guilty by a jury, whereas with proper advice he should have pleaded guilty from the outset and thereby received a shorter sentence than he ultimately did.

█ First, I reject the argument about failure to investigate. The cases discussing failure to investigate generally deal with performance at trial, *see e.g., Lema v. United States*, 987 F.2d 48, 55 (1st Cir.1993) (addressing a claim of ineffective assistance of counsel based on several grounds, including the failure to investigate the "potential testimony" of witnesses who were not called to testify), or a lawyer too willingly counseling a guilty plea where better investigation might have shown a defense. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (referring to "failure to investigate or discover potentially exculpatory evidence"). Here, the defendant went to trial, and he makes no assertion that he received inadequate representation in his trial on account of any lack of investigation. Instead, what the defendant is saying here is that even though he told his lawyer he did not commit the crime and was innocent, his lawyer should have investigated more thoroughly so as to argue him out of his position of innocence and persuade him to plead guilty: "although the Petitioner claimed he was innocent, Watson failed to confront him with any evidence to pursuade [sic] him to plead guilty." Memorandum of Fact and Law in Support of Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Petitioner's Memo") at 6 (Docket Item 73). I know of no authority for holding that the standards for adequate representation include the duty to amass evidence of guilt and argue a client out of his protestations of innocence. Moreover, the assertions are inconsistent with the record chronology I describe below.

█ I also reject the plea agreement argument. There is no evidence that a plea agreement was ever offered. All the defendant points to is a letter from the government notifying defense counsel that if a guilty plea was not tendered by a certain

date, the government would begin its trial preparation and thereafter "reserve[ ] the right to" resist any third-point reduction under U.S.S.G. § 3E1.1(b). Letter from the United States Attorney for the District of Maine to Paula Watson, Esq., dated September 30, 1996 (Attachment to Docket Item 73). That is neither a plea agreement nor evidence of an offer of a plea agreement.

 The defendant's fallback position if the plea agreement argument fails is that his lawyer never advised him of the reduced sentence advantages of pleading guilty and that he therefore did not know of them. I observe, as does the government, that this is a highly implausible assertion. Putting aside general knowledge, I note that the Presentence Report revealed that this defendant had extensive experience with obtaining reduced charges by pleading guilty in state courts. Presentence Report ¶¶ 26–28 & Addendum at 16. Nevertheless, in this case, the defendant says that he "was at all times told by counsel that trial was the only option . . .," Petitioner's Reply at 5, that he "did not receive any advice from his attorney about the fact that he could plead guilty," *id.* at 6,[1] and that "[c]ounsel should not be able to possess power to plead a person guilty or to cause them to stand trial. The choice must be the defendant's." *Id.* at 7. But the contemporaneous record contradicts the defendant. It reveals that chronologically this defendant first instructed his lawyer that he would plead guilty in this case, and then at the last minute "advised" his lawyer that he had changed these instructions and wanted to go to trial. *See* Defendant's Motion to Continue Trial with Incorporated Memorandum of Law, dated August 30, 1996 (Docket

Item 22) (seeking a deferral of a September 9, 1996, trial date). The defendant conveniently fails to mention that event. I conclude, therefore, that the defendant's allegations are inherently incredible and contradict the record.

No evidentiary hearing is required. The § 2255 motion is DENIED.[2]

SO ORDERED.

---

1. Contradictorily, he also says that "Watson did tell Petitioner that he could plead guilty, but what Watson failed to do is counsel Petitioner as to whether he should plea [sic] guilty." Petitioner's Memo at 10.

2. I also observe that if the defendant's arguments were accepted, the criminal justice system would be subject to endless manipulation. Here, the defendant went to trial, received a fair trial, and was convicted. The defendant appealed, and the United States Court of Appeals for the First Circuit affirmed his conviction. *See United States v. Castro,* 129 F.3d 226 (1st Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1569, 140 L.Ed.2d 803 (1998). It was certainly no part of his argument then that "guilty" was the only proper outcome. Having lost that appeal, he now turns around to attack his sentence and to argue that his lawyer should have persuaded him to plead guilty in the first place, and that on the basis of such an assertion he is entitled to an evidentiary hearing on the issue. If this argument were successful, every defendant incarcerated after a trial conviction would be able to insist that the Bureau of Prisons return him to the venue of his conviction for a later evidentiary hearing to assess such a claim.